Good morning. Good morning. May it please the court, my name is Rebecca Pennell representing Mr. Navarro. There were a couple of interesting evidentiary issues in this case that I wanted to discuss with the court. Going in different order from the briefing, I wanted to start with the open door doctrine. I think that that's a really problematic issue that seems to recur over and over again. In preparing for argument, I noticed that Judge Weinstein's treatise on evidence suggests that the open door doctrine has been used with such lack of discrimination, we'd probably do well to get rid of that term altogether. I think the more helpful term... That is the current view of law professors. Virtually all law professors say with contempt, you should never say open the door, and virtually all superior court judges say, that opened the door, that didn't open the door. Sure. Usually reconcile themselves by calling it curative admissibility. Curative admissibility, I think... I have trouble seeing why there isn't curative admissibility, or as we would have called it when I was trying cases, opening the door in this case. In this case. Well, a good point of comparison is one of the cases that I cited, United States v. Torrey. In United States v. Torrey, it was a bank robbery case. And for trial, the judge said, I'm not going to allow the government to get into evidence that was found during the execution of the search warrant. Specifically, there was a gun holster found. This was an armed robbery case, but there was no gun holster seen by the teller. In cross-examining the teller, the defense attorney asked if a gun had been found during the search of the house. And there hadn't been a gun found, only a holster. I thought we could go... Tell me what part of the analysis you think is controlling in Torrey. Well, what's part of the analysis that's controlling in Torrey is that, A, it wasn't misleading. There was no gun found in the house. And so you didn't get the first part of the curative admissibility or one of the parts of the curative admissibility doctrine. There has to be something misleading, nor was it improper. The defense attorney didn't go against the judge's order not to bring in evidence of the holster. He only brought in the fact that there was no gun found. And so it wasn't truthful. The sign case is the same thing. If a defense attorney elicits truthful information, that's not misleading in any way. Now, why isn't that distinguishable here? Because what happened was the government never said a thing about gangs. Sure. As far as we know, this is just like a really nice neighborhood where everybody just washes their car Saturday mornings. Seems that way. And then the defense attorney asks... I think the defense attorney brought up gangs eight times. And the innuendo or implication of the defense attorney's questions and the way they were formulated was, Hey, you find a gun? There are all kinds of bad guys with guns around here. This is a gang neighborhood. And I can't remember for sure. I think the defense attorney may even have emphasized that there's a red gang. That was critically important. And, yeah, you bet it was important. And the innuendo was that some other guy did it, one of these gang members. And that's completely proper for the government to say the defense is doing wrong. It's perfectly proper. Something wrong to say someone else would have done it. Counselors, it's perfectly proper and there's nothing wrong with it. The question is merely whether the government gets to tell the rest of the story, not whether the defense lawyer did something bad. Well, I see the curative admissibility doctrine as only starting when the defense does do something bad. There's two tests. One, did the defense attorney improperly elicit information? And, two, was it misleading? If not, it doesn't kick in. So it's not enough that what the attorney does is on the same subject. Right, right. And that's where I'm talking about the gun holster case. The attorney was talking about gun holsters. That didn't bring in everything on the topic of a gun. The tory doesn't say that the defense lawyer has to do something bad. After all, the rule that the custom adored doctrine is addressed to is not a rule against improper conduct. It's just a rule that the prosecutor can't bring up certain evidence in this case. Respectfully, I disagree. The way I've read the cases, the tory case, the sign case, the Osasuna case. I'm looking at the words in tory. I'm looking at the words in tory. There aren't very many of them. Sure. They're just one sentence, actually. Sure. Tory was more interesting for me for the facts than the discussion. There's more discussion in the sign case, for example. But the cases all stress that if it's truthful information and there is no violation of any rules, then the government doesn't get to bring in otherwise inadmissible evidence. And here, it wasn't just the defense attorney saying, this is a gang neighborhood, it might be something else. He needed to explain why the color was. A lot of information is truthful but can be misleading in isolation. For example, oh, gosh, are you over 21? Well, there are an awful lot of people who are over 21. They range from about 21 to 121. Sure. The defense didn't try to say he's not a gang member. He was dressed in all red. But the emphasis on it, there was no need for that emphasis on it, the strange emphasis through these leading questions. The defense never tried to say he's not a gang member, never tried to say he wasn't wearing red. The point wasn't so much these are gang people and maybe they have guns, but there was a red thread found on that gun. And in this neighborhood, red's fairly common. I have a question slightly different than that of Judge Kleinfeld. I think the government's case is very weak about the gun, and I'm troubled by this fact. Nobody saw Navarro with a gun. He didn't admit to possession. The only evidence was his proximity to the firearm and he'd get into the red thread. Right. So are there any cases that distinguish or deal with opening the door when the case is really, really weak? And by opening the door, it casts a spell, if you will, over all the rest of the evidence and kind of magnifies its importance. Is there any case law like that? I can't say that I've seen that spin, but certainly the cases, when you look at the cases that discuss it, they certainly talk about how strong or weak the case is. Obviously, it's the harmless air analysis. So I guess the two go together. I guess you may want to be sure I refine this a little bit. Arguendo. Yeah. Had this gang information not come in, I'm not sure that Navarro would have been convicted. I agree. It looked like there was enough evidence to show beyond a reasonable doubt that he had the gun. But when you add this, it swept him over the edge, at least it seems to be the case. So I guess what I'm trying to understand is you've got the boilerplate open door, you've got the curative instructions. The judge clearly tried to deal with this. I mean, he didn't just fly over it. He waited. But it's almost like the tide swept everything else over. It was highly prejudicial. So what do we do with this? Is there a refinement to opening the door that we need to consider in a case like this? And if so, what should that be? I think the refinement, the way I've read it, like I said, is that there needs to be, well, for one thing, there was no objection by the government. The open door adoption should not be a sword for the government. When the defense started getting into the issues of gangs, the government didn't object and say, hey, wait, you're opening the door. We want to go now and bring this evidence in. There was no objection. Why should they? There's nothing wrong with the questions. They're not objectionable. They're not objectionable. There was no court order to the defense lawyer. If he stood up and objected, I think the court would say overruled because he hadn't violated any rule. I agree, which is why they weren't allowed to open the door to otherwise inadmissible evidence. That's the test. Are they allowed to open the door to otherwise? I didn't follow the because. If there's no violation by the defense, the door isn't open to otherwise inadmissible evidence. Where does it say that? I never heard that rule. The cases all say otherwise inadmissible evidence, and I have this little device here, and I will find them in my one minute, 25 seconds of rebuttal. Do you want to save a little rebuttal time? I do. Maybe take a look at the device, and let's hear from the government and see what the government has to say here. Mr. Ekstrom, right? Yes, Your Honor. May it please the Court, Alexander Ekstrom on behalf of the Appellee United States of America. Your Honor, given the Court's questioning, I will focus on the second issue. And I'd like to first address the last question raised, which deals with the nature of the evidence. And that was in the sign case, where the sign talks about, in that case, there was a hearsay judgment by another court, which found the defendant in that case in contempt. The court found that the defendant's accurate statement about that order by another court didn't open the door to the reading of that order. But importantly, in sign, that order was itself hearsay. So the entirety of the quote cited by both the government... Excuse me, counsel. Can you give me the cite on sign, please? Certainly. That's going to be 493 F. 3rd, 1021, but the relevant language is at 1038. Okay. And how do you spell sign? S-I-N-E, Your Honor. Ninth Circuit, 2007. Very long. So 1038 is where the juicy quote is? Yes, and that's the quote about... There's a reference to otherwise inadmissible evidence, and it's cited in both parties' briefs. But in that case, the problem in sign was that the evidence itself was objectionable in the first instance. It was hearsay. In this case, the evidence that the government provided in rebuttal, as the courts pointed out, the initial questions were not inappropriate as such. They created a misrepresentation, and that was the government's position. So you're saying in sign, open the door really had nothing to do with anything because the evidence was inadmissible for an entirely different reason than it was inadmissible hearsay? Fairly stated. It had an 800 series problem with the evidence itself. Eight hundred series means hearsay? Yes, Your Honor. So what you're saying is what I said or something different? I believe we're saying the same thing, Your Honor. Yes. And in this case, the government was told, the court ruled sui sponte, that the government wasn't to comment on the fact that there was a gang house in the neighborhood or any gang involvement by the defendant. The defense, with a series of questions, the government submits open the door. The government didn't have to object because the evidence, as it came in, the government didn't believe it would be sustained. I agree with what I think Judge Kleinfeld said. I don't blame the government here. I think the government acted properly. The district court wrestled with it. It was really the defense that brought this in. I guess my question is, if the defense acted improperly, maybe it's just plain old IAC kind of stuff. I don't know. But the problem I have is this took seemingly a relatively weak case and swept it over the dam, it seems to me. And I'm troubled by that. I don't know exactly how to deal with it. But this was inflammatory, very inflammatory. On the other hand, the judge waited. It was the defense counsel that brought this up. I mean, it wasn't the government. So what do we do with that? You agree that this was a weak case? No, that was going to be my second response. Shocked. I know it doesn't surprise the court. But first of all, I would point out that what the court has described as an inflammatory issue, the idea of gangs, was evidence that was put into the record by the defense. I agree. And the government's three questions merely rebutted the false impression that there was an alternate perpetrator that possessed all the characteristics of the defendant that did this. That strikes me as not so stupid. I mean, you don't find a lot of guns on a sidewalk at, say, Post and Mason, but you might on maybe Jones and Leavenworth. No, they don't intersect. Jones and Turk. I have no basis of reference for that, Your Honor. Francisco. We're certainly not in Leavenworth. Certainly. But to address the other issue regarding the strength of the government's case, in this instance you have an individual who is contacted for a malicious mischief broken window whose immediate response to law enforcement contact is flight. Immediate. And so the flight has some value. How many other people were in the area? The officers consistently testified that, other than not being able to say that the houses were unoccupied, there was no one else present other than the responding officers, the juvenile who stayed put, and Ms. Smart-Lewitt, who was the responsible party for the house who came and allowed the retrieval of the firearm. We have a short track. We have not only the flight, but we have what is described as the defendant repeatedly trying to ram the door of the residence where he was contacted. We have the track, the location of the firearm. What about the location of the firearm, the track, did he say? The location of the firearm is directly along the track of the pursuit, shown not only by the Deputy Rojas. The gun is along the area where the guy was running. Certainly. And shown not only by the officer's memory of the track that he took, but it's discarded taser cartridge, which is very close to the gun itself, which was dropped during transition. In addition to that information, the government would submit that the fiber evidence is actually quite compelling evidence. The individual who testified said that he was able to exclude all the other red clothing that the defendant was wearing as not similar. And when pressed on cross-examination, actually sharpened his opinion that there was a strong similarity between the fibers that were found in the right pocket. Was there something special about them? I thought they were just like red sweatpants or something. The red sweatpants, the red sweatshirt, and the red hoodie were polyester. I have red sweatpants. Would the fiber in my sweatpants pocket be the same? It wouldn't because what had happened was this was a distinct fiber that was present in the pocket but not part of the construction of the pants themselves. Sure, the pockets are always different. Pockets are typically white and the sweatpants are red or some other color. They use a different fabric on the pocket. I believe in this case they were of uniform color. But in any event, the strand of thread that was in the pocket was distinctly different, both different in hue, different in chemical composition, different in physical profile, and consistent with both the fibers taken from the firearm itself and consistent with the fibers found in the slide of the Kimber firearm when one compares their condition. Something special about them, though, or are they like the fibers in all the pockets of all the sweatpants at the local dollar store in this neighborhood? They are different, and the testimony was that while lots of things are red, very few things are this color of red in this profile. Wasn't that the point of the question, though, by defense counsel about bringing out the gangs, that they wear red? I mean, wasn't that really a legitimate question? It was a legitimate question, but in light of the court's prior ruling, which – No, it had nothing to do with his membership. Other people, I don't see the connection between the question as to whether other people were wearing red, which is what was trying to be established, and his gang membership. And Judge Van Sickle said that if the question had simply been, is the color red prevalent in the neighborhood and would you expect to find it, that the questions wouldn't have raised the issue with the prior motion. Why would everybody be wearing red in the neighborhood? That's kind of a silly question. And again, the defense felt it was necessary to go into that, and once the defense did, you then set up the alternate perpetrator. But you have the question of whether he controverted Navarro's membership in a gang or whether, as Judge Schroeder just indicated, it was really just probing whether red was a prevalent color. In other words, a lot of other people wear red, too. Right. And under Torrey, doesn't that raise – doesn't that open that door as far as whether the question opened the door to the gang membership? And again, unlike the difference between the holster and the gun, we are talking about gangs in this case. So the government would submit that Torrey is not on point and it's the culmination of the questions creating the impression that an individual possessing all the characteristics of the defendant did the crime. And that's the government's contention. Okay. Thank you very much. Appreciate your argument. We'll hear the rebuttal. Your Honors, not only does the sign case, as counsel mentioned, talk about the introduction of otherwise inadmissible evidence, so does the D.C. Circuit case of Brown, which discusses in great detail the curative admissibility doctrine and signs sites to that case at length, that the curative admissibility doctrine allows for the introduction of inadmissible or irrelevant evidence by one party upon – if one party introduces inadmissible or irrelevant evidence. Counsel, I looked at sign and what's the killer for your side of the case is it's inadmissible. And what sign holds is that the opening the door doctrine is not so capacious as to allow the admission of any evidence made relevant without regard to its admissibility. Right. It was hearsay. Right. In this case, but there's also rules, that's 800 rules, but the rules of evidence also include 400 rules. And this was evidence that was inadmissible under 404B, inadmissible to protect the defendant. Under the shield of protecting the defendant, the defendant's not allowed to bring up evidence that red is a common color in this neighborhood and to explain to the jury why it's a common color in the neighborhood, to just say, well, this is a common color, it's not going to be very convincing. If it had been the local high school color, they would have been okay. Yeah, they would have brought in that, but there needs to be some explanation for why red's a common color. And the defense didn't ever once argue, oh, there's bad people. But 404B operates differently for other people than the defendant anyway. But nevertheless. There are two implications. One is there are a lot of bloods in this neighborhood, so you find red fiber, it's likely to be one of the bloods. Sign says that opening the door allows parties to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission. The false impression that might have resulted from the false impression is it was some other guy's gun, a blood. So the fact that this guy is a blood helps correct the possible false impression. It certainly can't be the rule that if the defense creates the impression that someone else did it, the government's allowed to bring in otherwise inadmissible evidence. That would certainly raise constitutional problems. That is what the burden of proof is. We have to, as defense attorneys, be able to say they're not meeting their burden of proof. They're not proving that this guy did it. To say that we throw out the rules of evidence. Why wouldn't it be analogous to motive evidence? The defense shows that the victim owed the perpetrator $10,000. The defense shows that some other guy owed the perpetrator $10,000, giving the perpetrator a motive with respect to the other guy. And then the prosecution says, well, now you've opened the door. Your guy also owed $10,000. And that would be the case. In our case, if we had tried to say that Mr. Navarro was not wearing red, they would have been able to bring in that evidence that he was wearing red. But the defense did not try to eliminate any of the red clothing. Why isn't being a blood and wearing red just the same as the $10,000? The only issue was who might have been responsible for that red thread. The defense very properly pointed out that this is a mere presence case. By definition, a mere presence case, someone else might have done it, and that there were a whole lot of other people wearing red threads in that neighborhood. There was nothing improper about that, nothing misleading, so the doctrine didn't kick in. Okay. Thank you very much, both of you, for your argument. The case of United States v. Navarro is submitted. The next case for argument is Wilbur v. State of Mind.
judges: Schroeder, Kleinfeld, Smith